IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROY L. CRITTENDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:16-cv-21-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Roy L. Crittenden ("Plaintiff") filed an application for social security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, on April 6, 2011. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). At that hearing, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, and further found Plaintiff was not disabled. Plaintiff appealed the decision to the Appeals Council, which remanded the case to the ALJ on April 15, 2014, finding that the "decision does not contain an adequate evaluation of the treating and nontreating source opinions." A second hearing was held before an ALJ on July 14, 2014. Following that hearing, the ALJ issued a decision finding Plaintiff had not been under a disability as defined in the Social Security Act from May 21, 2010, through the date of the decision. Plaintiff appealed

to the Appeals Council again, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4]

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-five years old at the time of the alleged disability onset date and is therefore considered a younger individual according to the regulations. Tr. 59. At the second hearing before the ALJ, Plaintiff was forty-nine years old and had completed high school. Tr. 72, 74. Following an administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 21, 2010, the alleged onset date[.]" Tr. 43. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative joint disease of the shoulders, history of left rotator cuff impingement, history of left elbow nerve entrapment, arthritic changes of the knees, carpal tunnel syndrome, diabetes mellitus with peripheral neuropathy, obesity, and hypertension[.]" Tr. 44. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"² Tr. 44. Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a range of "sedentary work," as that term is otherwise defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. He can stand or walk about 2 hours and can sit for at least 6 hours out of an 8-

---

² *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

hour workday. However, he can stand for no more than 20 minutes continuously and can sit for no more than 1 hour continuously. He can perform no overhead reaching on the left. He can perform tasks not requiring rapid, repetitive, forceful g[r]asping, but otherwise can perform handling and fingering on a frequent basis. He can perform tasks not involving exposure to workplace hazards such as unprotected heights and dangerous moving machinery. He can perform tasks not involving operation of vibrating tools or equipment.

Tr. 45. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "is unable to perform any past relevant work[.]" Tr. 59. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 59. The ALJ identified several representative occupations, including "Machine Tender," "Folder," and "Machine Operator." Tr. 60. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from May 21, 2010, through the date of this decision[.]" Tr. 60.

### IV.   PLAINTIFF'S CLAIMS

Plaintiff argues that "[t]he ALJ erred in failing to give appropriate weight to the opinions of [Plaintiff's] treating physician, and [in] failing to properly explain his reasons for the weight he assigned [to that treating physician]." Pl.'s Br. (Doc. 12) at 1.

### V.   DISCUSSION

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis,

what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  Good cause to discount the opinion of a treating physician exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," a court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion."  *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).  In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

Plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinions of Plaintiff's treating physician, Dr. Jeffrey Voreis, and in failing to properly explain his reasons for the weight he assigned Dr. Voreis. Doc. 12 at 4-7. The undersigned disagrees.

Upon completion of a medical source statement in 2011, Dr. Voreis indicated that Plaintiff can lift or carry occasionally 5-10 pounds. Tr. 748. He indicated that Plaintiff could stand and/or walk less than two hours and for thirty minutes uninterrupted, and could sit less than two hours and less than thirty minutes uninterrupted in an eight-hour workday. Tr. 749. He concluded that Plaintiff can occasionally finger, handle, and reach, as well as stoop, crouch, kneel and climb. Tr. 749-750. He concluded that Plaintiff could never crawl or balance and should avoid concentrated exposure to being around moving machinery and driving automobile equipment. Tr. 750.

In 2014, Dr. Voreis provided an updated statement regarding Plaintiff's physical abilities. See Tr. 879-892. In that assessment, Dr. Voreis stated that he felt Plaintiff was not able "to work any employment in the country for an 8 hour day or a 40 hour week. . . ." Tr. 879. He referenced the disability exam performed in 2011, and stated that Plaintiff could "now lift probably up to 20 or 25 pounds with his right upper extremity[,]" and "approximately ten pounds" in his left extremity. Tr. 880. Dr. Voreis noted that, since his

8

2011 exam, "as a result of work, that [Plaintiff] has achieved a significant improvement in range of motion especially of his upper extremities."  Tr. 884.  Nonetheless, Dr. Voreis concluded that Plaintiff would not meet the criteria for sedentary work because he "cannot sit, stand, walk, nor carry less than ten pounds for more than a few minutes at a time."  Tr. 884.  He further noted that he felt Plaintiff would be unable to do repetitive tasks, such as ticket tearing "because his hands will go numb and he will start dropping the the tickets and not have the strength to grip them."  Tr. 884.  Dr. Voreis expected Plaintiff's condition to continue to decline.  Tr. 885.

In determining that he would "not give controlling weight to the opinions of Jeffrey Voreis, M.D., regarding claimant's physical functional abilities[,]" the ALJ provided the following reasons for discounting the opinion:

> Dr. Voreis indicates that the claimant cannot perform sedentary work on a regular and continuing basis, 8-hours a day, 40-hours per week.  *Dr. Voreis is a treating source for the claimant; however, his opinions are inconsistent with the substantial evidence in this case.*  For example, in November 2011, Dr. Voreis stated that the claimant can stand or walk less than 2 hours and sit less than 2 hours in an 8-hour workday.  The doctor found, on examination, that the claimant had 3/5 strength in all muscle groups of the lower extremities[.]  Yet, his clinical finding is inconsistent with his own records showing the claimant to have normal gait and no focal neurologic deficits[.]  *His clinical finding is inconsistent with those of Dr. Epperson . . . , Dr. Banner . . ., Dr. Meadows . . ., and Dr. Watson . . .,* who all found the claimant to have a +4-5/5 strength in the lower extremities.  *His clinical finding is inconsistent with claimant's own reports that he has no difficulty sitting and uses no assistive, such as a cane, for ambulation[.]*  In November 2011, Dr. Voreis stated that the claimant can only occasionally handle, finger and reach with both hands[.]  On examination the doctor found the claimant to have absent reflexes in his upper extremities, diminished sensation in both hands, and 90 degrees abduction and external rotation of the left shoulder.  *His clinical findings are inconsistent with those of Dr. Epperson . . ., Dr. Banner . . ., Dr. Meadows . . ., and Dr. Watson . . . .*  These doctors generally indicate

9

> that the claimant has slight weakness and decreased sensation of the left hand, a "somewhat" numb sensation to light touch over the hands, normal or near-normal range of motion of the left shoulder . . ., normal range of motion of the right shoulder, 2/4 or intact reflexes, and +4-5/5 strength in the upper extremities with no atrophy. *His clinical findings are inconsistent with claimant's own reports that he has no difficulty reaching . . .*; that he uses no assistive devices such as wrist splints . . ., and that he can use his hands to care for his personal needs; mop; sweep; do laundry, dishes and some cleaning; turn a door knob; drive a car; and perform work picking up small limbs and brush and putting them in a chipper[.]

T. 58. Thus, while the ALJ acknowledged that Dr. Voreis was a treating source for Plaintiff, he did not afford him controlling weight, as he found his opinions inconsistent with the substantial evidence in the case, including evidence from his own examinations, evidence from Plaintiff's self-reports, and evidence from other physicians. Tr. 58.

As an initial note, it is clear to the undersigned that the ALJ properly justified his reasons for discounting the medical opinion of Dr. Voreis. Indeed, the ALJ noted that Dr. Voreis's opinion conflicted not only with statements from the Plaintiff and from other physicians, but also with his own examination of Plaintiff. As such, the undersigned concludes that the ALJ had "good cause" to discount the opinion of Dr. Voreis, a treating physician of Plaintiff. *See Phillips,* 357 F.3d at 1241 (11th Cir. 2004) (noting that good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").

Having determined that the ALJ provided good cause for discounting the opinion of Dr. Voreis, the undersigned turns to whether the ALJ committed reversible error by failing to assign a particular weight to Dr. Voreis's opinion. Clearly, the ALJ discounted the

opinion of Dr. Voreis and afforded it something less than controlling weight. However, that weight is not specified anywhere within the ALJ's opinion.

"Ordinarily, an ALJ's failure to explain the particular weight given to the different medical opinions provided is reversible error." *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975 (11th Cir. 2014) (quoting *Sharfarz*, 825 F. 2d at 279). "However, when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand." *Id.* That is the case here. Substantial evidence in the record supports the ALJ's articulation of Plaintiff's RFC, including evidence from other treating and non-examining physicians. Thus, the ALJ's failure to specify the particular weight he afforded the opinions of Dr. Voreis is harmless error.

The ALJ articulated the following restrictions in Plaintiff's RFC:

- Plaintiff can perform sedentary work.

- Plaintiff can lift up to ten pounds occasionally and less than ten pounds frequently.

- Plaintiff can stand or walk about two hours and can sit for at least six hours during an eight-hour workday. However, he can stand for no more than twenty minutes continuously and can sit for no more than one hour continuously.

- Plaintiff can perform no overhead reaching on the left.

- Plaintiff can perform tasks not requiring rapid, repetitive, forceful grasping, but otherwise can perform handling and fingering on a frequent basis.

- Plaintiff can perform tasks not involving exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

- Plaintiff can perform tasks not involving operation of vibrating tools or equipment.

Tr. 45.

Dr. Sam Banner, whom the ALJ affored "some weight," performed a consultative physical examination of Plaintiff and completed a medical source statement regarding Plaintiff's functional abilities. *See* Tr. 779-784. Dr. Banner advised that Plaintiff could lift and carry up to twenty pounds occasionally. Tr. 779. He determined that Plaintiff could sit up to eight hours, and for two hours uninterrupted; stand for one hour, and for thirty minutes uninterrupted; and walk for thirty minutes, and for fifteen minutes uninterrupted. Tr. 780. He found that Plaintiff could frequently use the dominant right hand for handling, fingering, feeling and pushing/pulling and occasionally use it for reaching. Tr. 781. While he noted that Plaintiff could never use the left hand for reaching overhead, he could use the left hand occasionally for reaching in other directions, as well as for handling, fingering, feeling, pushing and pulling. Tr. 781. Dr. Banner determined that Plaintiff could occasionally use his feet for the operation of foot controls and could occasionally climb stairs and ramps, balance, stoop, kneel and crouch. Tr. 782.

Dr. William Watson, whom the ALJ afforded "some weight," performed a consultative physical examination of Plaintiff and reached similar conclusions to Dr. Banner when completing a medical source statement regarding Plaintiff's physical abilities. *See* Tr. 797-802. In his assessment, Dr. Watson found that Plaintiff can frequently lift and carry up to twenty pounds and occasionally lift or carry up to fifty pounds. Tr. 797. He determined Plaintiff could sit five-and-a-half hours in an eight-hour

workday, and for one hour uninterrupted. Tr. 798. He found Plaintiff could stand or walk thirty minutes during a workday, and for five to ten minutes uninterrupted. Tr. 798. He noted that Plaintiff can frequently use his right hand for reaching and occasionally use his right hand for handling, fingering and feeling, and pushing and pulling. Tr. 799. Dr. Watson noted that Plaintiff could occasionally use his left hand for handling, fingering and feeling, but never for reaching, pushing, or pulling. Tr. 799. He determined that Plaintiff can occasionally use his feet for the operation of foot controls, climb stairs and ramps, balance, stoop, kneel, crouch and crawl. Tr. 798-799. He concluded that Plaintiff should never use ladders or scaffolds, and should avoid unprotected heights. Tr. 799.

Finally, the ALJ relied upon the opinion of Dr. Robert Heilpern, whom he afforded less than significant weight. Dr. Heilpern, who was not an examining physician, determined that Plaintiff could occasionally lift twenty pounds. Tr. 737. He concluded that Plaintiff could stand and/or walk, with normal breaks, for a total of six hours, and could sit for a total of six hours in a workday. Tr. 737. Dr. Heilpern felt Plaintiff would be limited in his upper extremities in pushing and pulling, as well as his ability to reach, handle, finger, and feel. Tr. 737, 739. Finally, Dr. Heilpern determined that Plaintiff could frequently climb ramps/stairs, balance, stoop, and kneel, but could never crawl or climb ladders or ropes. Tr. 738.

The RFC articulated by the ALJ is consistent with the opinions of Dr. Banner, Dr. Watson, and Dr. Heilpern. Indeed, all three doctors agreed that Plaintiff could carry up to twenty pounds frequently. Plaintiff's RFC restricted him to lifting and carrying ten pounds

13

occasionally and less than ten pounds frequently.  Dr. Banner determined that Plaintiff could sit for eight hours while Dr. Watson determined Plaintiff could sit for five-and-a-half hours.  Dr. Heilpern opined that Plaintiff could sit for six hours.  Plaintiff's RFC restricted him to sitting for no more than six hours in an eight-hour day, and no more than one hour continuously.  Dr. Banner determined that Plaintiff could stand for an hour and walk for thirty minutes, while Dr. Watson determined that Plaintiff could stand or walk for thirty minutes.  Dr. Heilpern concluded that Plaintiff could stand and/or walk for approximately six hours per day.  Plaintiff's RFC restricted his standing and walking to no more than two hours per working day, and additionally restricted Plaintiff's standing for no more than twenty minutes continuously.  Finally, Dr. Banner and Dr. Watson similarly agreed that Plaintiff could frequently use his right extremity, while his left extremity could be used occasionally for some tasks, and never for reaching.  Dr. Heilpern concluded that Plaintiff had limitations in reaching, handling, fingering and feeling.  Plaintiff's RFC restricted him to tasks that do not involve overhead reaching with the left hand.

    Clearly, there are some contradictions between Dr. Voreis's assessment of Plaintiff's physical abilities and the assessments of Dr. Banner and Dr. Watson.  However, the ALJ gave good cause to discount the opinion of Dr. Voreis.  That being said, the ALJ's articulation of Plaintiff's RFC predominately reflect the assessments of Dr. Banner, Dr. Watson, and Dr. Heilpert, whom the ALJ afforded "some weight" or less than significant weight.  As the ALJ's articulation of Plaintiff's RFC is supported by the assessments of those physicians, the undersigned concludes that there is sufficient evidence in the record

to support the ALJ's RFC assessment.  Thus, the ALJ's error, if any, of failing to assign a particular weight to the opinion of Dr. Voreis is harmless, and the ALJ's decision should not be reversed on that basis.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 3rd day of January, 2017.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE